## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MICHAEL A. ERLICH,

      Plaintiff,

v.                                       2:23-cv-738-SPC-NPM

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Michael A. Erlich seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings. (Doc. 9),[1] Erlich filed an opening brief (Doc. 15), the Commissioner responded (Doc. 16), and Erlich replied (Doc. 17). As discussed in this report, the decision of the Commissioner should be affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months. [2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.   Factual and procedural history

On June 4, 2012, Erlich filed an application for disability insurance benefits. (Tr. 301). He asserted an onset date of April 6, 2012, alleging disability due to the following: PTSD, post-concussion disorder, tinnitus, anxiety, and depression. (Tr. 1103). As of the onset date, Erlich was 42 years old with some college education and electrical training. (Tr. 385, 1103). Erlich previously worked as a field engineer and a sales associate. (Tr. 385).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 404.1511.

On October 1, 2012, an ALJ issued Erlich a fully favorable decision. (Tr. 153-67). However, the Appeals Council remanded the case for further review. (Tr. 168-74). On remand, a new ALJ was assigned to the claim, and Erlich amended the alleged onset date to December 1, 2012. (Tr. 380). This ALJ, however, issued an unfavorable decision, finding Erlich was not disabled. (Tr. 31-45). After the Appeals Council denied Erlich's request for review (Tr. 1149-52), Erlich appealed to this court. On August 29, 2019, the court reversed the Commissioner's decision and remanded the case for further review. *See Erlich v. Comm'r of Soc. Sec.*, No. 2:17-cv-469-FTM-MRM, 2018 WL 4103558 (M.D. Fla. Aug. 29, 2018).

This time on remand, ALJ Eric Anschuetz was assigned to Erlich's claim. He held hearings on October 22, 2019 (Tr. 1035-1102) and August 12, 2022. (Tr. 988-1034). On January 10, 2023, ALJ Anschuetz issued an unfavorable decision finding Erlich not disabled. (Tr. 934-69). And with a detailed discussion about the medical evidence, the Appeals Council denied Erlich's timely request for review. (Tr. 918-22). Erlich then brought the matter to this court, and the case is ripe for judicial review.

### C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of

> impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that while Erlich had several years of part-time work, he had not engaged in substantial gainful activity from December 1, 2012, the alleged onset date, through June 30, 2022, his date last insured. (Tr. 938). At step two, the ALJ characterized Erlich's severe impairments as: post-concussive disorder, major depressive disorder, anxiety disorder, hearing loss, PTSD, cavernous hemangioma, cervical spondylosis, cervical radiculopathy, lumbar degenerative changes, headache, and obesity. (Tr. 938-39). At step three, the ALJ determined Erlich did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 939).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry 20 pounds frequently and occasionally. He can stand and/or walk a total of four hours in an eight hour workday. He can sit for 6 hours in an 8 hour workday. Frequent climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent handling and fingering; work environments of moderate noise as defined by SCO noise level III or less; no exposure to extreme bright lights like stage lights, headlights, or bright inspection lights, but normal home and office lighting is acceptable; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break; low stress work defined as only occasional decision-making, only occasional changes in the work setting, and occasional interaction with coworkers, supervisors, and the public. He must work in an indoor climate controlled normally comfortable environment with no temperature extremes.

(Tr. 943). Consequently, the ALJ found Erlich was unable to perform his past relevant work. (Tr. 966). At step five, the ALJ found Erlich could perform other work that exists in significant numbers in the national economy. (Tr. 966-69). In support, a vocational expert testified (Tr. 1022-30) that an individual of Erlich's age, education, work experience, and RFC can perform work similar to the following representative occupations:

- *Routing clerk,* DOT #222.687, light; SVP 2, with 105,000 jobs in the national economy;

- *Office helper,* DOT #239.567-010, light, SVP 2, with 14,000 jobs in the national economy;

- *Router*, DOT #222.587-038, light, SVP 2, with 35,000 jobs in the

economy.[5]

Thus, for purposes of the Act, the ALJ concluded Erlich was not disabled from December 1, 2012, the alleged onset date, through June 30, 2022, the date last insured. (Tr. 969).

## II.   Analysis

Erlich's appeal asserts the ALJ's decision is not supported by substantial evidence because he failed to properly weigh the opinions of Dr. Daryl Di Dio and Dr. Adam Di Dio.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence

---

[5] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.   The ALJ sufficiently weighed the opinions of Drs. Daryl and Adam Di Dio.**

Erlich argues the ALJ failed to give appropriate weight to the medical opinions of Dr. Daryl Di Dio and Dr. Adam Di Dio.[6] "Medical opinions are

---

[6] Dr. Adam Di Dio is Dr. Daryl Di Dio's son. To avoid confusion, the court will refer to each doctor by their full name.

statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and the claimant's physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (cleaned up) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).[7]

"Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (internal citation omitted). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." *Zanders v. Colvin*, No. CV412-182, 2013 WL 4077456, *5 (S.D. Ga. Aug. 12, 2013). When determining the weight to give to a medical opinion, an ALJ considers several factors, including: (1) the examining relationship; (2) the treatment relationship; (3) whether the opinion is

---

[7] Because Erlich filed his application for benefits in 2012, it is subject to the administration's pre-March 2017 regulations and the case law that construes and applies them.

amply supported; (4) whether the opinion is consistent with the record; (5) the doctor's specialization; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (internal citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." *Lewis*, 125 F.3d at 1440 (internal citation omitted).

Turning first to Dr. Daryl Di Dio. He is a clinical psychologist who began treating Erlich in 2010. During his many years treating Erlich, he provided numerous opinions. From 2013-2015, for instance, he opined that Erlich needed to be limited to part time work, noting that Erlich had marked limitations in his ability to interact appropriately with the public, supervisors, and coworkers; respond appropriately to work pressures; and respond appropriately to changes in a routine work setting. And he noted Erlich's irritability issues could lead to confrontation with supervisors. (Tr. 617, 832-33). He concluded Erlich is completely disabled. (Tr. 606). In a 2015 letter, he recommended a noise-free, reduced stress environment and stated Erlich is unable to return to gainful employment. (Tr. 1938-39). He consistently noted that Erlich appeared depressed and anxious (Tr. 1853-81), and in a 2016 letter, he stated Erlich has periods of anger and rage combined with periods of depression and anxiety that render him unemployable. In this same letter, Dr. Daryl Di Dio explained Erlich's

attention and concentration, his social interaction, and his instrumental activities of daily living are markedly impaired. (Tr. 836). In 2017, he reported that Erlich would require enhanced supervision, had an extreme limitation in his ability to interact with others, a marked limitation in his ability to concentrate, persist, or maintain pace (along with other moderate limitations), and would be off task more than a quarter of the workday. (Tr. 1987-91; 2552). He made similar observations in 2022. (Tr. 4133-35). And at the 2019 hearing, Dr. Daryl Di Dio testified that Erlich has been unable to work since 2006. In sum, the doctor assigned Erlich with disabling mental limitations that he believes preclude Erlich from full-time work.

The ALJ thoroughly considered and ultimately discounted Dr. Daryl Di Dio's opinions. Over two pages of the ALJ's thirty-six-page opinion were dedicated just to this assessment. To begin, he observed that the doctor's "extreme opinions" are inconsistent with his treatment notes. As the ALJ observed, Dr. Daryl Di Dio's treatment notes "generally do not reflect the claimant having any significant deficits in his attention or concentration." (Tr. 964). Other than Dr. Daryl Di Dio occasionally checking a box indicating such an impairment, the ALJ is correct. And simply identifying an impairment, without more, carries little weight. *See Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work[.]" (internal citations omitted)); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th

Cir. 2005) ("a diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient."); *Hamrick v. Kijakazi*, No. 8:20-cv-2606-TPB-TGW, 2022 WL 4136605, *10 (M.D. Fla. Aug. 4, 2022) ("the conclusory check-box format of Dr. Ransom's opinions is, in itself, a recognized basis for discounting the assessment").

Dr. Daryl Di Dio also routinely reported that Erlich was depressed and anxious. Yet he also described Erlich as cooperative, his thought process was intact, he had an appropriate affect, he was well oriented, and sometimes calm. (Tr. 1853-81, 1842-48, 2499-2504, 2929-32). In fact, on various occasions from 2013 to 2015, he found Erlich's mood to be "euthymic." (Tr. 1856, 1857, 1861-62, 1864-65, 1868-72, 1877, 1881). And in 2019, Dr. Daryl Di Dio observed Erlich was "stable" on multiple occasions. (Tr. 2496, 2499). These inconsistent findings and observations in the treatment notes supply cause for discounting the opinions. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 541 (11th Cir. 2016) (noting an ALJ properly discounts a treating physician's opinion when it is inconsistent with the treater's own notes).

As for the remainder of Dr. Daryl Di Dio's opinions, the ALJ found they are inconsistent with the record as a whole. Indeed, the record repeatedly shows, across multiple treaters' notes, that Erlich demonstrates good or intact judgment; he is calm and cooperative; he is oriented as to time, place, and person; he is alert and has a

normal, even pleasant, affect; his thinking is logical, and he maintains good concentration and attention. (Tr. 758, 760, 762, 765, 874, 886, 2088, 2093-94, 2103, 2126, 2286, 2289, 2292, 2363, 2364, 2377, 2388, 2400, 2439, 2548, 2550, 2726, 3025, 3144, 3293, 4089, 4121-23, 4184). From 2018 to 2022, five different treaters reported Erlich's mood as normal or euthymic. (Tr. 2108, 2377, 2364, 3293, 4122). Indeed, in 2018, Erlich reported that he "is better" (Tr. 2105), his mood has improved, and he has decreased irritability. (Tr. 2477). Similarly, in April 2022, he reported feeling better. (Tr. 4111). Erlich even stated that he considers himself healthier than others his age. (Tr. 3219, 3224, 3368). The foregoing record, particularly the more recent reports from 2018 to 2022 reflecting improvement in Erlich's condition, generally contradict Dr. Daryl Di Dio's extreme mental limitations. *See Ybarra*, 658 F. App'x at 541 (noting an ALJ may discount a treating physician's opinion when it is unsupported by medical evidence and inconsistent with the record as a whole).

Looking more narrowly at Dr. Daryl Di Dio's conclusions, he opined that Erlich had irritability issues that could lead to confrontation with supervisors, and Erlich's anger and rage combined with depression and anxiety rendered him unemployable. But, as the ALJ points out, Erlich reported improvement with his anger/rage so long as he takes his medications before bed. (Tr. 2088, 2093, 2098).

In fact, on several occasions in 2018, Erlich outright denied anger issues. (Tr. 2282, 2285, 2288).

Regarding Erlich's overall depression and anxiety, the record suggests improvement with treatment. He reported a positive response to transcranial magnetic stimulations (TMS) treatment. (Tr. 2090, 2125). In 2015, he stated that medication keeps him "fairly level." (Tr. 3144). In April 2022, he reported that Zoloft reduced his anxiety, irritability, and depression without any side effects. Indeed, he asserted that since taking Zoloft, he has not experienced any panic or anxiety. And with improved sleep, his energy level increased. (Tr. 4111). And during the August 2022 hearing, he again stated his medication provides him relief. (Tr. 997-98). The recurrent positive responses to medication and treatment supplies further cause for the ALJ to discount Dr. Daryl Di Dio's opinions. *See Hantzis v. Comm'r of Soc. Sec.*, 686 F. App'x 634, 637 (11th Cir. 2017) (substantial evidence supported the ALJ's conclusion that treaters' opinions were not supported by the record because "[m]edical records showed that [claimant] experienced improvement with medication and therapies"); *Dyer v. Barnhart*, 395 F.3d 1206, 1211–12 (11th Cir. 2005) ("the ALJ articulated that although [claimant] was treated for anxiety, he reported feeling better after being treated with medications").

The record also suggests Erlich's ability to concentrate is not as impaired as Dr. Daryl Di Dio suggests. At the various hearings, Erlich reported watching

television or movies for eight to twelve hours a day and that he likes to read. (Tr. 76-77, 995). He can (and does) drive.[8] And treatment notes otherwise reveal Erlich is "fully capable of performing" activities of daily living. (Tr. 3224, 3368, 3920). "An ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011).

Apart from the medical records, Erlich's employment history also supplies substantial evidence in support of the ALJ's decision. In July 2015, Erlich reported that he worked as a volunteer police officer and was even thinking of joining the police academy. (Tr. 800). In October 2015, he reported that he is doing well and is looking for part-time work. (Tr. 830). In January and June 2017, he reported working for a fire-suppressant company as a warehouse assistant. (Tr. 903, 2550). In November 2017, he reported working in IT. (Tr. 2276). And in December 2018, he reported working part-time as a property manager. (Tr. 2074). Erlich's continuous desire to seek employment contradicts his purported lack of motivation and inability to socially interact, which he and Dr. Daryl Di Dio suggest preclude him from full-

---

[8] The ALJ explained Erlich's ability to drive is a "significant reason to discount the impact his mental health symptoms [have] on his ability to concentrate and focus" because "[o]ne need only consider that even minimal operation of a motor vehicle requires substantial attention, concentration, understanding, remembering and carrying out complex functions, and substantial exercise of independent judgment." (Tr. 942).

time employment. That he aspired to join the police academy and continuously sought employment reveals a desire to work and an admission that he can.

But that is not all. During both hearings, Erlich testified that he is still working in his part-time role as a property manager, describing the job as "perfect" for him. (Tr. 993, 1012-13, 1041). As of the latest hearing in August 2022, Erlich had maintained this position for at least three years. Continuing employment—albeit, not at the level of substantial gainful activity—still suggests that his ability to work is not as limited as Dr. Daryl Di Dio suggests. *See* 20 C.F.R. § 404.1571 ("The work … that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013).

As for Dr. Daryl Di Dio's report indicating Erlich was "100 percent disabled" (Tr. 606), such an opinion is reserved to the ALJ. *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) ("According to 20 C.F.R. § 404.1527(d), the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner."). So the ALJ rightfully disregarded it. And Dr. Daryl Di Dio's recommendation restraining Erlich to a noise-free environment was partially adopted in the RFC as the ALJ limited Erlich to a "work environment of moderate noise." (Tr. 943).

The ALJ also observed a lack of inpatient mental health treatment or psychiatric hospitalizations when discounting Dr. Daryl Di Dio's opinion. (Tr. 964). Erlich insists this was improper. But even assuming it was, "the ALJ considered a number of other factors in evaluating [Erlich's] claim and did not unduly rely on [his] mental health treatment history"—or lack thereof. *Leigh v. Comm'r of Soc. Sec.*, No. 6:23-cv-212-DCI, 2024 WL 939596, *2 (M.D. Fla. Mar. 5, 2024) (rejecting claimant's argument that the ALJ erred in finding the lack of emergency room or inpatient treatment for health concerns was evidence discrediting her subjective complaint of her psychiatric limitations). So this point is unmoving.

Erlich also argues the ALJ "cherry-picked" evidence in finding Dr. Daryl Di Dio's opinion was inconsistent with the lack of medical findings showing deficits in attention and concentration. (Doc. 15 at 16). But "there is a fine line between evaluating the decision for 'cherry-picking' and reweighing the evidence." *Frangione v. Comm'r of Soc. Sec.*, No. 6:20-cv-1298-GJK, 2021 WL 9569655, *5 (M.D. Fla. Sept. 24, 2021). Erlich asks the court to cross that line. He argues:

> [I]n the very exams the ALJ cited[,] [Erlich] was also found to have hyperactive, agitated, and impulsive behavior, sad, irritable, labile, angry, and anxious mood with occasional panic attacks; anxious, sullen, sad, tearful, and constricted affect, as well as chronic frustration and angry, apathy, and moderate to severe sadness. The ALJ may not simply ignore these findings in favor of hyper-focusing on a single unremarkable aspect of these exams.

(Doc. 15 at 16-17 (internal citations omitted)). This argument is without merit.

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (cleaned up). The ALJ's decision was far from a broad rejection. Even if the ALJ did not explicitly reference every symptom favorable to a finding of disability, such as the ones Erlich cites, the ALJ considered them generally. For instance, the ALJ noted that Dr. Bernardo Arias described Erlich's behavior "as hyperactive, agitated, and impulsive, *but* he was also cooperative and pleasant." (Tr. 953, 955 (emphasis added)). The ALJ explained that the same treating physician found Erlich's "mood was sad (fluctuating), irritable (fluctuating), labile, angry, and anxious with occasional panic attacks." (Tr. 955). There were also observations that Erlich displayed an "anxious and depressed mood *but* was oriented and alert." (Tr. 955 (emphasis added)). Plus, the ALJ ultimately found Erlich had several severe impairments, including post-concussive disorder, major depressive disorder, PTSD, and anxiety disorder (Tr. 938), and he crafted the RFC accordingly. So rather than "cherry-picking," the ALJ adequately considered both favorable and unfavorable evidence.

While there undoubtedly is evidence in the record to support Erlich's disability claim, "the mere fact that the record may support a contrary conclusion is

not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004). So the court must decline the invitation to reweigh the evidence and potentially come to a different conclusion. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that [plaintiff] points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner."). Indeed, it is improper to second guess the weight given to a treating physician's opinion when the ALJ articulates a specific justification for it. *Hunter v. SSA*, 808 F.3d 818, 823 (11th Cir. 2015). The ALJ has done so here.

The flaw in Erlich's appeal are his isolated attacks on portions of the ALJ's decision. In doing so, he misses the proverbial forest through the trees. For instance, had the ALJ discounted Dr. Daryl Di Dio's opinions solely because of Erlich's lack of inpatient mental health treatment or psychiatric hospitalizations, then his decision would certainly have less support. But just as the ALJ considered the record as a whole, his decision must be read in the same manner. *See Taylor v. Comm'r of Soc. Sec.*, No. 21-12804, 2022 WL 1634086, *5 (11th Cir. May 24, 2022)[9] ("True, the

---

[9] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. See 11th Cir. R. 36–2.

activities of daily living relied on by the ALJ are not enough to disqualify [claimant] from eligibility for disability benefits," but the ALJ "articulated six evidence-based inconsistencies between the treating physicians' opinions and [claimant's] medical records."); *Persaud v. Kijakazi*, No. 20-62184-CIV, 2022 WL 16829349, *5 (S.D. Fla. Sept. 19, 2022), *report and recommendation adopted sub nom.* 2022 WL 5240097 (Oct. 6, 2022) ("Plaintiff asks this Court to view each assessment in isolation. However, the ALJ's decision was not made in isolation. … Far from cherry picking, the ALJ pointed to extensive record evidence to support his conclusions."). The ALJ articulated several reasons for discounting Dr. Daryl Di Dio's opinions: the inconsistency with his treatment notes and other treaters' notes, which includes Erlich's lack of inpatient treatment, his employment history, his activities of daily living, and his general improvement with treatment. In doing so, the court finds the ALJ had good cause to discount Dr. Daryl Di Dio's opinions. *See Hantzis*, 686 F. App'x at 637 ("The ALJ provided good cause for discounting these opinions when he explained that they were unsupported by the doctors' own internal notes and inconsistent with the entire record.").

Turning now to Dr. Adam Di Dio's opinions. Dr. Adam Di Dio is a neurologist who Erlich visited largely for pain management. Erlich last treated with him in 2017. Although he largely opined on Erlich's physical limitations, Erlich's brief seems to focus on Dr. Adam Di Dio's psychological opinions. And his concerns

with the ALJ's analysis of Dr. Adam Di Dio's opinions are largely the same as those for Dr. Daryl Di Dio.[10]

Given Dr. Adam Di Dio largely treated Erlich for his physical limitations, his opinions regarding Erlich's psychological conditions are limited. For instance, his treatment notes consistently observe Erlich's anxiety, depression, and post-concussion syndrome but otherwise reveal unremarkable mental status examinations that only reflect Erlich was alert and attentive; oriented to person, place, and situation; and can follow all commands across the midline without difficulty. (Tr. 758, 760, 762, 765, 824, 828, 843, 903, 1839, 2550). Indeed, there are no specific cognitive or psychological limitations noted. However, in an April 2016 letter, Dr. Adam Di Dio opined that Erlich is psychologically and cognitively incapable of working full-time because his psychiatric conditions render him unable to maintain proper focus, concentration, and attention. And, overall, he believes Erlich is disabled. (Tr. 835).

The ALJ assigned little weight to these opinions because they are not supported by his own treatment notes, which generally indicate normal mental status examinations without any significant cognitive deficits. (Tr. 965). Substantial evidence supports this finding. As noted above, the mental-status examinations in

---

[10] Indeed, in his briefing, Erlich states: "To avoid redundancy, Plaintiff would ask the Court to recall the errors discussed" for Dr. Daryl Di Dio. (Doc. 15 at 20).

Dr. Adam Di Dio's notes primarily reflect that Erlich was alert and attentive; oriented to person, place, and situation; and can follow all commands across the midline without difficulty. Although his notes frequently observe that Erlich is depressed, anxious, and has post-concussion syndrome, these conclusory statements are of little probative value. *See Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 653-54 (11th Cir. 2011) (treating physician's findings were not supported by objective evidence when treatment notes merely provided a diagnosis or documented the claimant's subjective complaints). Indeed, there is little in the record from Dr. Adam Di Dio explaining how his psychological diagnoses and observed symptoms translate into the assigned limitations. *See Ritorto v. Saul*, No. 8:19- cv-2668-T-TGW, 2020 WL 7074538, *3 (M.D. Fla. Dec. 3, 2020) (noting that the treating physician did not "provide a meaningful explanation for his opinion of extreme limitations which is, in itself, a recognized basis for discounting a treating physician's opinions.").

The ALJ also discounted Dr. Adam Di Dio's opinions regarding Erlich's mental limitations because other treaters' notes do not reflect any significant cognitive deficits. In other words, his opinions are inconsistent with the record as a whole. For all the reasons discussed above regarding the inconsistency between Dr. Daryl Di Dio's opinions and the record, this finding is likewise supported by substantial evidence. Of note, Dr. Adam Di Dio last treated Erlich in 2017.

Subsequently, in 2018, the record begins to reflect improvement in Erlich's condition with treatment and medication, and he obtained his current property-manager position (which he maintained for at least three years). Accordingly, good cause supports the ALJ's discount of Dr. Adam Di Dio's opinions.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk should be directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

Recommended on July 30, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**